UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X
TODD C. BANK, Individually and on
Behalf of All Others Similarly Situated,

                                    Plaintiff(s),

        -against-

PHILIPS ELECTRONICS NORTH AMERICA CORPORATION,

                                    Defendant(s).
-------------------------------------------------------------------------------X

**Docket No.: 14- CV- 5312**

**J. Gleeson – M.J. Scanlon**

**ATTORNEY AFFIDAVIT**

**KENNETH B. DANIELSEN,** being duly sworn deposes and says:

1)     I am an associate of the firm, Ahmuty, Demers & McManus, counsel of record for PHILIPS ELECTRONICS NORTH AMERICA CORPORATION (hereinafter "Philips), in this action and I am fully familiar with the facts and circumstance herein. Annexed hereto as Exhibit "A" is the complaint. Annexed hereto as Exhibit "B" is the answer.

2)     Philips manufactures and sells the product "Lifeline," which is a home monitoring device and service that allows seniors to be connected via a remote radio and base that is connected to a home monitoring station. If the user of the product is in need of emergency assistance, they can press the button on the remote and be connected, instantly, to a representative that can summon, police, fire and medical assistance. There are many competitor products in this market segment (referred to generically as "PERS" Service).

3)     Prior to receiving plaintiff's initial demand letter and draft-complaint on July 29, 2014 (attached as Exhibit "A" to the affidavit of Paul Laurino, Esq. of Philips), and, indeed, prior to the operative dates set forth in plaintiff's complaint, Philips had become aware of a

pervasive problem within the PERS industry; a scam orchestrated by unknown third-parties (completely unrelated to Philips and its legitimate competitors in the PERS marketplace). The scam was such that unauthorized criminal scammers, seeking to exploit senior-citizens, would make telephone calls to seniors (some using automated messages known as "robocalls" and some using regular person to person calling). Once on the phone, the senior would be offered a free or inexpensive PERS system (sometimes a Philips system, sometimes another – because of Philips' market share and notoriety, it was not uncommon that Philips' Lifeline would be the system offered up by the scammers). These calls were complete scams. As the documents attached to the Laurino affidavit evidence, the calls were not authorized by Philips, or by any legitimate actors in the PERS market. Often the entire purpose of the call would be to extract personal information or credit card information from the target senior citizen.

4) Philips, starting several months before Mr. Bank even received the subject telephone calls at issue in this lawsuit, was at the forefront in combating these improper practices and was working in conjunction with state and federal enforcement agencies and other PERS industry members on ways to curtail and/or to bring these scams to an end. Philips also engaged in a marketing campaign to bring about awareness of these scams and even retained private investigators to try to identify the source of the scams.

5) As noted, plaintiff wrote to Philips on July 29, 2014 enclosing a draft complaint (Exhibit "A" attached to the affidavit of Paul Laurino, Esq.). Mr. Laurino responded to Mr. Bank with an e-mail (attached as Exhibit "B" to the affidavit of Paul Laurino, Esq.), on August 22, 2014 wherein Mr. Laurino explained in detail that the calls received by Mr. Bank were not made by Philips, or by an agent of Philips, or by anyone authorized by Philips; but

instead, were the work of unknown scammers. Embedded within the e-mail of August 22, 2014 were several hyperlinks, directing plaintiff to websites (primarily maintained by State and Federal law enforcement agencies), explaining the nature and scope of the telemarketing scams being conducted by nefarious third-party actors, to wit:

> "Our marketing team was able to enlighten me on exactly what you experienced. There is an illegal enterprise running a fraudulent medical alert scam … Just as you described in your letter, the scammers place robocalls offering $3,000 in coupons, then falsely claim to be offering a medical alert device using the names of reputable organizations (e.g., the AARP) as cover for their activities … Earlier this year, the FTC and Florida Attorney General attempted to prosecute one or more such scammers … Consequently, many state AG's offices have issued scam alerts on these medical alert scams. Evidently, these scammers are attempting to deceitfully obtain billing information in order to charge the individual for 'so-called' 'monitoring services' …" *See,* Exhibit "B" to the affidavit of Paul Laurino, Esq.

The hyperlinked articles, embedded within the August 22, 2014 e-mail are attached as Exhibit "C" to the affidavit of Paul Laurino, Esq. The articles demonstrate the pervasiveness of the scams and the fact that the information regarding the scams was in the public domain months before plaintiff filed his complaint in this case (evidencing plaintiff's obvious lack of inquiry into the "facts" that would form the basis of his complaint).

6)   With respect to Philips' efforts to put a stop to the fraudulent robocalls being made by unknown scammers, attached as Exhibit "D" to the affidavit of Paul Laurino, Esq. is an internal Philips e-mail dated April 30, 2013 from Brenda Vere to Erik Sande and Mark Rutherford enclosing a copy of a public relations release (text only) loaded to the MAMA[1]

---

[1] MAMA stands for Medical Alert Monitoring Association. It is a group comprised of companies related to the PERS market and dedicated to advancing the industry and developing ethical industry-wide practices. At all times relevant hereot, Philips was a member of MAMA.

3

website regarding robocalling. The text of the press release is attached as Exhibit "D" to the affidavit of Paul Laurino, Esq. and states in relevant part:

> "MAMA has recently learned of widespread illegal and fraudulent telemarketing and robo- calling targeting senior citizens...MAMA members do not engage in illegal or fraudulent telemarketing or robo- calling... the telemarketers making these illegal and fraudulent calls are not authorized to represent any MAMA member."

Philips also began working with Dr. Marion, a trusted spokesperson in the market for senior products and services, to produce brochures aimed at spreading awareness about the dangers of robocalling scams, purporting to peddle PERS devices and services. The brochures are attached as Exhibit "E" to the affidavit of Paul Laurino, Esq.

7) Philips also engaged a private investigator to attempt to root out and expose the source of the scams. An initial inquiry was made to an investigation firm, Kroll and Associates. Attached to the affidavit of Paul Laurino, Esq. is an e-mail chain between Kroll and Philips (Exhibit "F") and the final report issued by Kroll, summarizing the investigation (Exhibit "G"). The investigation tracked dozens of numbers, seeming to originate in various states, only to have each lead essentially go cold as numbers were disconnected, etc.

8) Several Philips employees met with the Tim Langella from the Business Technology & Economic Development Division of the Massachusetts Attorney General's office to discuss the scams and how best to address the issue. Attached as Exhibit "H" to the affidavit of Paul Laurino, Esq. is the executive summary and briefing prepared in advance of the meeting. The stated purpose of the meeting was to:

> "brief [Tim Langella] on the ongoing robocall scam issues and Philips' related efforts to date, and to request assistance from Attorney General Coakley's office..."

In addition to meeting with Mr. Langella, other efforts were made to collaborate with law enforcement. An internal Philips e-mail dated September 3, 2013, attached as Exhibit "I" to the affidavit of Paul Laurino, Esq., discussed gathering additional information for such purposes. Also attached to the e-mail was an excel spreadsheet containing hyperlinks to various state attorney general information releases concerning robocall scams. The hyperlinked spreadsheet (attached as Exhibit "J" to the affidavit of Paul Laurino, Esq.), included a release from New York Attorney General Eric T. Schneiderman, made public on May 23, 2013 (attached as Exhibit "K" to the affidavit of Paul Laurino, Esq.). The release stated in relevant part:

> "AG Eric T. Scheiderman issued a warning to New Yorkers today after receiving information from multiple consumers about a scam targeting senior with robo-calls advising that the have been 'approved for medical alert equipment at no charge.' The message uses scare tactics to induce consumers…The robo-call identifies the business as 'Senior Medical Alert' or 'Senior Medical Advisors'…the scammers appear to operate from the Syracuse or Utica area, using telephone numbers with a 315 area code… during an undercover call…the representative also claimed to be affiliated with United Health." *Id.*

More than a year before Mr. Bank filed his complaint; information from the New York State Attorney General's office was available, addressing the very scam that forms the purported basis of Bank's complaint.

9. Philips works with several local groups that are permitted to sell Lifeline products and services. These groups are separate entities and are not controlled by, nor are the groups agents or affiliates of Philips. These groups, called "programs" were directed as early as the first quarter of 2013 to be cautious of any scammers and to remind their customers not

5

to give out any personal information and to be cautious of companies using high pressure sales tactics, including robocalling. The programs were also asked to forward any leads, as far as who might be responsible for the scams, to Philips. The bulletin containing these warnings is attached as Exhibit "L" to the affidavit of Paul Laurino, Esq.

10. At no time did Philips engage in robocalling, nor did Philips grant any third-party the authority to engage in robocalling for the purpose of selling Philips' products and services. As outlined herein, Philips has gone to great lengths to combat robocalling/scam calls. The calls received by Mr. Bank were not made or authorized by Philips.

11. As set forth in the annexed memorandum of law, the allegations of the plaintiff's complaint are impermissibly vague and devoid of any facts as to any connection between Philips and the calls allegedly made to plaintiff. Instead, plaintiff attempts to bridge this glaring gap in his factual allegations by using the conclusory terms "on behalf of" or "with authorization." See par 24 of the complaint. This court has already ruled in prior cases that such conclusory terms are impermissible. Plaintiff does not allege any actual factual specifics at all (because none exist). Further, there is no direct reference to the Philip's product in the operative paragraph wherein a partial reference is made to the contents of the communication. See par 22 of the complaint. In sum, plaintiff's factual allegations are insufficient to state a cause of action against Philips

12. As also indicated in the annexed memorandum of law, the cases referenced in plaintiff's complaint do not stand for the proposition that conclusory allegations are sufficient to state a claim under the TCPA. There must be sufficient facts alleged to establish an agency

relationship so as to warrant the imposition of vicarious liability. No such facts are alleged in this case and as such, the instant motion should be granted.

13. Significantly, plaintiff provided a discovery response containing his telephone number, (718) 521-6043. Attached hereto as Exhibit "C" is a search result showing that the telephone line was activated through Conversent Communications, Inc. Conversent was subsequently acquired by CTC Communications and Choice One Communications in 2006, pursuant to the attached trade article (Exhibit "D"). Conversent was a *niche* telephone carrier that exclusively provided telephone service to commercial entities, i.e. businesses. *Id*. Upon information and belief, the company did not sell to individuals, only business entities (and if plaintiff did, in fact, establish phone service through Conversent – the service was established as a commercial line, not a personal line). As set forth in defendant's memorandum of law, the TCPA applies to calls made to residential numbers – not commercial telephone lines. As such, plaintiff's claims should be dismissed as the statute is not implicated by the calls alleged in the complaint.

14. Finally, the class actions allegations must also be dismissed as that plaintiff can not serve as both "class representative" and also "counsel of record" in that the requirement of "adequate representation" cannot be met. And the claims under New York Law must be dismissed as Mr. Bank's sole claim being worth less than $75,000, cannot be a basis for diversity jurisdiction standing alone.

**WHEREFORE**, it is requested the court grant the within applications in their entirety.

KENNETH B. DANIELSEN [9176]

Sworn to before me this 20th day of
February 2015

JENNAFER ORTMULLER
NOTARY PUBLIC, State of New York
No. 4973242
Qualified in Nassau County
Commission Expires Oct. 15, 2018